**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JAMES WILKERSON**,
2474 Alabama Ave., S.E. #302
Washington, D.C. 20020,

    Plaintiff,

v.                                             JURY TRIAL DEMANDED

**DISTRICT OF COLUMBIA HOUSING AUTHORITY**,
1133 North Capitol, St., N.E.
Washington, D.C. 20002,

    Defendant.

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

PLAINTIFF JAMES WILKERSON, through the undersigned counsel, brings this action pursuant to 42 U.S.C. § 1983 seeking damages to remedy violations of his rights secured by the Due Process Clause of the Fifth Amendment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 2000d, and common law.

2. This Court possesses proper subject matter and personal jurisdiction over the parties.

3. Venue is appropriate in this District.

4. Defendant is a citizen of and resides in the District of Columbia.

5. The acts complained of occurred in the District of Columbia. Plaintiff's cause of action arose in the District of Columbia.

## PARTIES

6. Plaintiff James Wilkerson is a citizen of the United States and a resident of the District of Columbia.

7. Defendant District of Columbia Housing Authority ("DCHA") is an agency within the District of Columbia. When legislative bodies delegate authority to a municipal agency, an action by that agency constitutes a government policy. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 660-61, 694 (1978). As a federally funded independent housing authority established by the District of Columbia, *see* D.C. Code § 6-202 (2004), the DCHA is a "state actor" for purposes of 42 U.S.C. § 1983.

## ALLEGATIONS OF FACT

8. Plaintiff James Wilkerson is a 63-year old man who moved into 2474 Alabama Ave. SE #302, Washington, D.C. 20020 in or around November 2014 with a Housing Choice Voucher Program ("HCVP") voucher.

9. Defendant DCHA issued the HCVP voucher to Plaintiff on or around August 26, 2014.

10. Recipients of HCVP vouchers must receive recertification on a routine basis in order to keep the vouchers.

11. On or around December 29, 2014, Plaintiff visited Ms. Alicia Robinson, his DCHA rent specialist, to inform her that he would soon be incarcerated beginning on or around February 5, 2015, and to ensure any inspections of his apartment and any recertification procedure would be handled properly.

12. Upon Ms. Robinson's advice, Plaintiff executed a Power of Attorney ("POA") at DCHA for his then-girlfriend, Ms. Gina Burney, listing her address and phone number on the POA document.

13. The POA stated that Ms. Burney would handle all related matters in connection with DCHA as required for recertification, leasing, and finance.

14. The POA also stated that "[s]pecialist must attach documentation that shows participant's inability to visit the Housing Authority."

15. Plaintiff provided the DCHA a notarized copy of the POA and, upon information and belief, DCHA retained a notarized copy of the POA for Plaintiff's file.

16. Plaintiff understood that all future DCHA mailing regarding his HCPV voucher, including recertification, would be sent to Ms. Burney, not to Plaintiff's apartment.

17. On or around February 5, 2015, Plaintiff began a period of incarceration, first through the District of Columbia Department of Corrections, followed by the Federal Correctional Institute in Butner, North Carolina ("FCI Butner").

18. In or around November 2015, Plaintiff called Mr. Keith Moon, DCHA Quality Assurance Supervisor, to ensure that DCHA would have access to Plaintiff's apartment while he was incarcerated to perform DCHA's annual HCVP apartment inspection.

19. During this phone conversation, Plaintiff provided Mr. Moon the name and contact information for his case manager, Ms. Stubbs. Plaintiff informed Mr. Moon that, should anything come up with respect to his HCVP apartment inspection or his HCVP recertification, Mr. Moon could contact Ms. Stubbs or could reach him at FCI Butner.

20. On or around December 14, 2015, DCHA mailed a "Mail-In Recertification" notice to 2474 Alabama Ave. SE, #302, Washington, D.C. 20020.

21. The "Mail-In Recertification" was not mailed to Ms. Burney or to Plaintiff at FCI Butner.

22. On or around January 7, 2016, DCHA mailed a "Second Mail-In Reminder" notice to 2474 Alabama Ave. SE, #302, Washington, D.C. 20020.

23. The "Second Mail-In Recertification" was not mailed to Ms. Burney or to Plaintiff at FCI Butner.

24. On or around February 11, 2016, DCHA mailed a "Client Notification of Non-Compliance for Failing to Recertify" to 2474 Alabama Ave. SE, #302, Washington, D.C. 20020, instructing Plaintiff to attend a Family Obligation Briefing on March 7, 2016 to preserve his voucher.

25. The "Client Notification of Non-Compliance for Failing to Recertify" was not mailed to Ms. Burney or to Plaintiff at FCI Butner.

26. On or around March 14, 2016, DCHA mailed a "Recommendation for Termination for Failing to Recertify" to 2474 Alabama Ave. SE, #302, Washington, D.C. 20020.

27. The "Recommendation for Termination for Failing to Recertify" was not mailed to Ms. Burney or to Plaintiff at FCI Butner.

28. On or around April 22, 2016, DCHA terminated Plaintiff's HCVP voucher, and mailed a "Termination of Participation Notice" to 2474 Alabama Ave. SE, #302, Washington, D.C. 20020.

29. The "Termination of Participation Notice" was not mailed to Ms. Burney or to Plaintiff at FCI Butner.

30. The DCHA did not mail the forgoing documents to Plaintiff's POA, Ms. Burney, nor did the DCHA make any attempt to reach out to or contact Ms. Burney concerning the recertification notifications that were sent to Plaintiff's apartment address. Further, DCHA did not attempt to contact Plaintiff at FCI Butner.

31. During the entire recertification period, December 14, 2015 to April 22, 2016, Plaintiff was incarcerated.

32. Despite knowing that Plaintiff was incarcerated during the recertification period, DCHA did not send the recertification notices to his POA, Ms. Burney, and did not attempt to contact Ms. Burney about Plaintiff's recertification.

33. Further, the DCHA did not attempt to contact Plaintiff while incarcerated to discuss his recertification.

34. Plaintiff attempted to contact Ms. Robinson and Mr. Moon at DCHA during his incarceration.

35. In or around May 2016, Plaintiff asked a friend, Jerome Washington, to speak with DCHA on his behalf regarding his recertification.

36. In or around late summer 2016, Mr. Washington went to DCHA to speak to DCHA staff regarding Plaintiff's recertification.

37. However, each time, DCHA staff refused to speak with Mr. Washington, despite Mr. Washington's statements that Plaintiff was incarcerated and could not come to DCHA himself.

38. Upon information and belief, DCHA staff informed Mr. Washington that he needed to have a POA for Plaintiff.

39. On or around June 10, 2016, Plaintiff mailed a letter to Mr. Moon requesting that Mr. Washington be his new POA to handle "any business concerning the District of Columbia Housing Authority Voucher Program and Apartment" and explaining Mr. Washington's attempts to contact DCHA.

40. On or around August 1, 2016, Plaintiff called Mr. Moon to discuss his voucher. Mr. Moon told Plaintiff to execute a new POA for Mr. Washington.

41. On or around August 3, 2016, Plaintiff executed a POA for Mr. Washington, which he mailed to DCHA.

42. On or around August 4, 2016, Plaintiff sent an additional letter directly to Ms. Robinson to discuss his housing voucher. In this letter, Plaintiff indicated that he had attempted to reach Ms. Robinson by phone.

43. On or around June 12, 2017, Plaintiff was released from incarceration.

44. Shortly before release, Plaintiff learned he had lost his unit, as his landlord had evicted him during his incarceration after DCHA stopped making payments on his behalf.

45. Plaintiff's landlord destroyed Plaintiff's personal property during the eviction, including artwork, clothing, pictures, furniture, and legal documents. Landlord also kept Plaintiff's security deposit, totaling approximately $1,300.00.

46. Plaintiff's eviction made it more difficult for Plaintiff to obtain new housing. For around seven months after release, Plaintiff stayed in transition housing, located at 1401 S Street SE, Washington, D.C., 20020, and in the Emery Work Bed Program, located at 1725 Lincoln Road, NE, Washington, D.C. 20002.

47. On or around August 23, 2017, L. Jacob Fien-Helfman, a volunteer attorney with the Washington Clinic for the Homeless, sent a letter to Mario Cuahutle, Office of the General Counsel, requesting Plaintiff's reinstatement in the HCVP or a hearing contesting his termination from the HCVP.

48. Upon information and belief, DCHA never responded to Mr. Fien-Helfman's letter.

49. None of DCHA's notices, including the Termination Notice, were sent to Plaintiff's then-POA, Ms. Burney.

50. Instead, the notices were sent to Plaintiff's apartment, and Plaintiff did not timely receive them due to his incarceration.

51. Despite knowing that Plaintiff was incarcerated and rather than contacting Plaintiff's designated POA to address recertification in his absence, DCHA sent every recertification notice to Plaintiff's prior address.

52. DCHA's notices were inadequate and not reasonably calculated to provide actual notice to Plaintiff in violation of Plaintiff's due process rights.

53. Plaintiff did not receive reinstatement of his HCVP voucher until April 3, 2018.

54. Between his release from incarceration on June 12, 2017, and May 22, 2018, Plaintiff did not have a permanent home.

55. During this period of homelessness from around June 7, 2017 to May 22, 2018, Plaintiff was consumed by constant stress and suffered from a lack of self-worth. Plaintiff's period of homelessness exacerbated his efforts to maintain steady employment.

## COUNT I

### VIOLATIONS OF RIGHTS SECURED BY THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
**(42 U.S.C. § 1983)**

56. Plaintiff hereby incorporates by reference each of the allegations set forth in the preceding paragraphs as if realleged fully herein.

57. The Fifth and Fourteenth Amendments of the U.S. Constitution prohibit state actors from depriving an individual of life, liberty, or property without due process of law.

58. Included within this protection are the rights to notice and a hearing when the state deprives an individual of fundamental life, liberty, or property interests.

59. Plaintiff has a fundamental property interest in maintaining continued occupancy in DCHA subsidized housing.

60. Defendant violated Plaintiff's due process rights by denying him timely and adequate notice that his HCVP voucher would be terminated.

61. As a result of Defendant's unlawful conduct, Plaintiff has suffered compensatory damages for loss to his personal property and for associated emotional distress and pain and suffering.

### RELIEF REQUESTED

WHEREFORE, Plaintiff prays for judgment as follows:

A. Compensatory damages against defendant, including but not limited to damages for lost property, emotional distress, and pain and suffering;

B. Pre- and post-judgment interest as allowed by law;

C. Reasonable costs and attorneys' fees incurred in bringing this action; and

D. Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all counts so triable.

                                                  Respectfully submitted,

March 14, 2019                        EPSTEIN BECKER & GREEN, P.C.

                                            /s/ Nathaniel M. Glasser

*Lauren Farruggia, Esq.\**              Nathaniel Glasser, Esq. (D.C. Bar No. 1003630)
(D.C. Bar No. 1600224)            Jonathan Hoerner, Esq.  (D.C. Bar No. 1034271)
*\*Admission before Court to be sought*   Epstein Becker & Green, P.C.
                                          1227 25th St NW #700
                                          Washington, D.C. 20037
                                          (202) 861-0900
                                          Fax: 202-296-2882